Good morning, Your Honors. Good morning, again and again. Yes, representing Kathleen Coleman. The important thing about this case is we have an unrepresented, potentially mentally impaired claimant who tells the ALJ... She's in college, right? Well, it's... yes, yes. An answer to that is yes. Okay. And she does some kind of work study. The ALJ found it didn't add up to substantial gainful activity. I'm curious about this. There were certain things that seemed odd to me in the record that I couldn't get out of. People talk about that she went to prison for a while, but we don't know why she went to prison, but it was somewhere after the accident. Right. But then there's also something that she was a correctional officer, too, at some point? I have to admit, I couldn't figure that out. I do know she was in prison for part of the time. Was that because of the accident? Do we know why she was in prison? Unfortunately, this is one of the cases I took over at the Ninth Circuit level, and I didn't put in the homework. Well, usually we sort of... The fact that it said she was a correctional officer at some point, but then she was in a corrections facility at another point, and there was an accident involved that it just... the dots just didn't seem to connect. I agree, and I can't resolve that. But in front of the ALJ, she was unrepresented, and the ALJ has a special duty of care, a special duty to develop the record and advance arguments for and against a claimant who's unrepresented and, in particular, one who might be mentally impaired. And the ALJ failed that here. Here's a nice quote from the ALJ. There's no mention of any comprehensive mental examinations. Right. There should be. That would be a good thing to have to make sure this record is fully developed. Does this still go back to, and we talked about it in the prior case, just so that we... Yeah. But you discussed your view of the difference between a medically determinable mental impairment as discussed in the regulations, 20 CFR, Section 404.1520AB, and a colorable claim of a mental impairment as discussed in Kaiser. So you still maintain that view? Yes, and here we have great evidence. We have a treating physician, a psychiatrist, prescribing Seroquel and Doxepin. Wait. So just from a prescription, you believe that meets the 1508 requirement that you establish through medical evidence consisting of signed symptoms and laboratory findings? I'd say, yeah. Yes. How? How could that be? There's something going on with that doctor that makes them prescribe those heavy-duties. But the idea is you get behind that. You don't just take at face value something. You get behind it. Right. I see nothing in this record other than boxes checked, or her statements, regarding signed symptoms and laboratory findings. I mean, it's just devoid. There is no evidence of it whatsoever. Well, we do have the doctor who says she has PTSD. That's just saying that, though. That's what this regulation says. That's not enough. You need more. You need a diagnostic test that's established, and then you need the results from that test. Okay. If we're going to follow that, the ALJ had a duty to develop the record because he should have recontacted that physician to say, why are you giving this woman such poisonous medicines? Those are pretty heavy-duty. You say she's got PTSD. Why? Or have a consultative mental examination that was missing from the record for this unrepresented, potentially mentally impaired claimant. Well, what do we have in the record suggesting that Coleman's alleged mental impairments have limited her work activities in any way? What's in the record on that point? It's true. That is hard. No doctor specified any limitations. That's true. She testified. Is Mark a mental health assessment? Well, the Ms. Moyers, I couldn't determine if she was qualified as what they call acceptable, meaning having a doctorate in a relevant area. So we don't know if ARC's a medical provider or exactly what ARC is. Treat her as a germane witness. Treat her as under 063P and other source. But the reason for the ARC evaluation dealt with educational placement and her concerns within that educational framework. Well, but mental impairment as well, cognitive losses and deficiencies. So Ms. Moyer can't offer a diagnosis, but she can apply tests and say here's how she's lining up on her perceptual speed. Here's how she's lining up on these various cognitive things. Right. And she says she's slow. Cognitively she has some challenges. But I just have a hard time standing back from this case, just if I was a layperson standing back from this case. Right. And most people say, are you kidding me? This person would be entitled to Social Security benefits who's in college and does pretty well by all accounts. Well, is it – Something about this case doesn't sit right overall. I understand. The overpowering factor, though, is she was unrepresented and the ALJ said there's no mention of any comprehensive mental examinations. But there are things going on mentally. Apparently her doctors are giving her medicine or she's going to the ARC Institute. In fact, she asked the ALJ, can you at least leave the record open for me? I'm getting this ARC study done, and the ALJ did not do it. But that's harmless because ultimately it went to the Appeals Council and we consider it. Appeals Council considered it, and then it comes back to this court as part of the record as a whole, and there are no germane reasons to reject it. And the doctor or the therapist has outlined a number of cognitive impairments that could affect functioning – or cognitive limitations. She couldn't diagnose the clinical impairments. Right. So it seems almost irrelevant. Except that it shows functional loss cognitively, right? Some of these were in the bottom 1% or less. She had sort of a staggered profile, which suggests something going on. It wasn't as if, oh, generally she's slow but she does pretty well. She was doing pretty well, but then she had these staggering deficits in a few places. Well, there's a lot of people that take antidepressants and they're not disabled, and I would hazard to guess there's probably someone in this courtroom, this area here. It's a good guess. Yeah. Right. But somebody who takes antidepressants has a medically determinable impairment. So the fact that somebody is being prescribed suggests a doctor somewhere thought there was a medically determinable impairment that could be treated with medicine. So that is another clue that there needs to be a full mental health workup here. Or recontacting group health. Both the therapist there who said PTSD or Dr. Lerner who was giving her the heavy meds. The main thing, again, she's unrepresented. She came forward and did the best she could at the hearing, but there is evidence, colorable evidence, something that would lead to medical determinability, lead to severity. Something at least colorable suggesting develop the record further. But it seems to me there's nothing. You say there's colorable. In the sense of the regulations, there is no evidence. No, there's a clear position. ALJ can consider in reaching the determination of mental impairment. So the question becomes whether that triggered some duty, what was known. And based on the type of evidence presented, it seems to me it's a hard sell to say there's an ambiguity or inadequacy here. With the Seroquel affidavit? Remember, she didn't make a claim, right, for mental impairment. She was unrepresented. She did not make a claim, correct. But she's unrepresented. She's got the prescriptions for Seroquel. She has the diagnoses of PTSD. We don't know the basis of that diagnosis. We don't know the doctor's full thinking. That's a duty to develop question for an unrepresented claimant. Find out. Do a comprehensive medical exam. Recontact the treating physician. And allow in the cognitive testing, showing cognitive deficits, specific cognitive deficits. Again, that calls up the possibility of a mental impairment, which should trigger application of the psychiatric review technique, and more importantly, further development with a comprehensive psych eval. Would you like to reserve the balance? Yeah, I'll reserve the balance. Thank you. Good morning. Good morning. Jeff McClain for the Commissioner of Social Security. As has been discussed, the key fact in this case is that Planoff was a full-time student who also was working up to 10 hours a week in a media center at the University of Puget Sound. I think that it's helpful to delineate between depression, anxiety, and PTSD, for which there are no signs, symptoms, and laboratory findings anywhere in the record that could suggest the existence of medically determinable impairment, and the learning impairment that was mentioned at the end of her hearing and then present in the AHRQ Institute records similar to the ALJ, or excuse me, to the Appeals Council. What about Mr. Baird's argument that because she was unrepresented, and you've already pointed to several deficiencies in the record, the ALJ had the duty to develop those ambiguous areas?  Well, what do you mean, failed to carry that burden? Does that mean she has to carry that burden before the ALJ's duty to develop the record becomes active? That's backward, isn't it? I mean, it's to help her carry her burden if she needs that help.  I think that these are different ways of framing the issue. One way of framing it is the step two burden that's on the plaintiff. Now, this is an inquisitorial proceeding, and so the ALJ also has a duty to develop the record if there's ambiguous evidence or it's insufficient for an evaluation of her claim. Here, there's no insufficiency in the record because plaintiff is a full-time college student, she is also doing work, and there's no suggestion from any of her medical sources that she suffers any limitations from anxiety or PTSD or depression. What if she had said that? You know, if she said, well, you can see I put my prescriptions here, and this is for that, this is for that, and I have this problem and that problem, would that have triggered the ALJ to do something more? That would have given the ALJ a greater reason to trigger it, and it's a fact-specific inquiry. That's a judgment call, and the ALJ is making a discretionary decision on this issue. Now, do you know anything more about resolving anything on the timeline about what this person has done? I do not, Your Honor. She worked for the Department of Corrections in Arizona, which I believe was more remote in time, and then my understanding, since we're in the Western District of Washington now, is that she moved. I have no more information. You know, she was incarcerated. I don't know why. Was that in Washington, the incarceration, I mean? I believe it was, but actually, no, I believe it was in Arizona, so I don't have any more information. I apologize. It was in Arizona. It was in Arizona. Arizona Department of Corrections form in there. That's correct. I think, yeah. Can you help me with the duty to develop the record? At this stage, who has the burden? I'm going back to Judge DeShima's question. Who has the burden? Is there a case law that says who has the burden? Yeah, I'm not aware of any case law. The general burden of showing disability is on the plaintiff. In some sense, this is burden shifting when you're talking about the duty to develop the record, although I'm not aware of any cases that have expressed it in those terms. So I believe that you have to just look at the standard at issue here, which is whether there's an insufficiency in the record or an ambiguity in the record. And the ALJ is exercising their discretion in deciding whether or not to develop it or not. But your view is there may be evidence of mental impairment, but nothing regarding limitations such that it would trigger that duty? There's no evidence of a medically determinable mental impairment, although there are cursory mentions of PTSD, diagnosis of depression. And because there's no suggestion of any limitations of any sort, and plaintiff is, you know, looking at the record as a whole, functioning at the university and working up to 10 hours a week, those factors weigh against developing the record further. As regards to the Arcs Institute report, when you're looking at Bruce's evidence, the key question is whether substantial evidence supports the ALJ's decision. In spite of the new evidence submitted to the Appeals Council, this new evidence doesn't deprive the ALJ's decision of that support. If Your Honors have no further questions. We don't appear to. Thank you for your argument. All right. Two cases to consider on duty to develop the record for the unrepresented. That would be Tonya Pettyen v. Halter, where there's a mental impairment. The ALJ had a heightened duty to develop the record, and this court remanded for the ALJ to do so, to recontact a treating physician who was a mental health physician. Do you have a cite to that? You know, I argued the case for the government, but I don't remember the cite. Well, so what were the facts? I have it. It's 242F3, right? That's it. Yeah. There we had, in Tonya Pettyen, there was vague treating source evidence. Actually, it was illegible, and it was vague, but it came from a treating physician. So this court remanded for the ALJ to develop the record further by recontacting that physician to understand the bases of his findings, conclusions, decisions. That would be parallel here to recontacting Dr. Lerner to ask, why PTSD? Why Seroquel? Why Doxepin? What are you doing? Is it relevant what the claimant is actually doing at the time or how the claimant presents in court? I mean, obviously, someone could, you know, I mean, we've all had experiences where someone is just, quote, unquote, whacked. You know, it's not a medical term, but they're clearly not, you know, they're not running, you know, on. Leaner can be used like that. Yes. The ALJ can do that. Also, the use of ongoing schooling can be a factor to discredit a claim. In this case, though, it looks like she's self-scheduled, very self-scheduled, and she's the one, I think, who said she needed to reschedule throughout the week, right? She had problems scheduling. That might fit with the findings of the AHRQ Institute, that she could do things accurately or swiftly, but she couldn't do both. She had processing speed errors. If so, again, it triggers the duty to develop. It suggests there might be a mental impairment there that would be worth having a comprehensive psyche about. My other case to cite is McLeod, which was, I think, from last year, mainly used as a harmless error case. But it's also duty to develop the record for the unrepresented. There's a great attention in this court to protecting the interests of the unrepresented. And the ALJ has the duty to protect the interests of the claimant as well. It's not a hostile adversarial proceeding. Yeah, I understand that. I'm asking more of a very technical question. Yeah. On appeal, who has at this stage now the burden to show that there was error in that regard? That's all I was asking. I have the burden to show there's error. Even on that issue? Even on that issue. But using McLeod as an example, there the ALJ didn't try to obtain a VA disability rating. When the claimant testified, I might have one. The point was that it was an unrepresented claimant, and so the ALJ had the duty to protect those interests. That would be true here for an unrepresented claimant. There's enough going on to recontact the treating sources or do a comprehensive psych eval so there would be one in the record. All right. Thank you for your argument. This matter will stand submitted.
judges: Seabright, Tashima, Callahan